UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TRANG NGUYEN, JANY PHRATSACHACK, and SIYHA XIONG, | Case No. 11-CV-3225 (PJS/SER) |
| Plaintiffs, | |
| v. | ORDER |
| OFFICER CHRISTOPHER LOKKE, in his individual and official capacities; OFFICER SUNDIATA BRONSON, in his individual and official capacities; and CITY OF MINNEAPOLIS, | |
| Defendants. | |

Zorislav R. Leyderman, LAW OFFICE OF ZORISLAV R. LEYDERMAN, for plaintiffs.

Sara J. Lathrop and Andrea Kloehn Naef, MINNEAPOLIS CITY ATTORNEY'S OFFICE, for defendants.

This civil-rights action arises out of an encounter outside of a Minneapolis nightclub between plaintiffs Trang Nguyen, Jany Phratsachack, and Siyha Xiong, on the one hand, and defendants Christopher Lokke and Sundiata Bronson, on the other. Lokke and Bronson are police officers employed by defendant City of Minneapolis ("the City"). Although this is a relatively straightforward case, plaintiffs managed to plead 30 separate claims under 42 U.S.C. § 1983 and state law.[1]

---

[1] Plaintiffs' counsel is warned that "[t]his Court has repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' complaints — complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." *Gurman v. Metro Housing and Redevelopment Auth.*, 842 F.Supp.2d 1151, 1153 (D. Minn. 2011) (collecting cases). Many of the 30 counts pleaded in the amended complaint serve no practical purpose except to delay resolution of this case and inflict needless work on the parties and the Court.

This matter is before the Court on defendants' motion for partial summary judgment. Based on the parties' stipulation, the Court has already dismissed Counts 9 and 10 (Nguyen's emotional-distress claims) as well as portions of Counts 5, 15, and 25 (plaintiffs' § 1983 claims against the City). ECF No. 21. For the reasons stated on the record at the hearing on defendants' motion, the Court now dismisses the remainder of Counts 5, 15, and 25 (plaintiffs' § 1983 claims against the City), as well as Counts 19, 20, 29, and 30 (Phratsachack's and Xiong's emotional-distress claims) and Count 21 (Xiong's First Amendment retaliation claim against the officers). Likewise, for the reasons stated on the record at the hearing, defendants' motion is denied as to Counts 4, 14, and 23 (plaintiffs' Equal Protection claims against the officers).

For the reasons that follow, defendants' motion is denied as to Count 1 (Nguyen's First Amendment retaliation claim against the officers), Count 3 (Nguyen's false-arrest claim against the officers), and Counts 2, 13, and 22 (plaintiffs' excessive-force claims against the officers).

## I. BACKGROUND

The facts are sharply disputed, but, taking the record in the light most favorable to plaintiffs, a jury could find the following:[2]

Nguyen, Phratsachack, and Xiong are longtime friends. On March 5, 2011, the three women decided to enjoy a night out on the town. They hired a limousine to pick them up at Nguyen's home and take them to downtown Minneapolis. After stopping first at a restaurant and then at a bar, the women went to the Elixir nightclub in the warehouse district. Over the course of the evening, they each had about five drinks.

---

[2]The three plaintiffs' accounts differ from one another in some respects, and the timing of some of the alleged events is a little unclear. For the most part, however, these discrepancies are not relevant to defendants' motion.

Sometime between 12:30 and 1:00 a.m., the women decided to leave Elixir and return to Nguyen's home, where they planned to spend the night. Nguyen called the limo driver and the three women went outside to wait for him. As it was a cold night, the women sought shelter from the wind in the doorway of a nearby building. The building had a recessed entryway with double glass doors that opened outward. Phratsachack Dep. 23-24. Xiong crouched in the corner of the entryway in front of one of the doors, trying to keep warm. Phratsachack Dep. 23-24. Nguyen and Phratsachack stood in front of Xiong, and the three women chatted while waiting for the limo. Nguyen Dep. 31.

Nguyen and Phratsachack noticed a figure or figures approaching from inside the building. Nguyen Dep. 31. Both warned Xiong to move out of the way. Nguyen Dep. 31. As noted, the building had double doors, and Xiong was blocking only one of the two doors. Nguyen Dep. 102. Xiong started to scoot over to make more room. Nguyen Dep. 31. Before Xiong could get up, though, the door behind her swung open. Phratsachack Dep. 25-26. Officer Lokke, who had opened the door, slammed the door into Xiong several times while saying "get the fuck up." Nguyen Dep. 32-33; Phratsachack Dep. 26-27; Xiong Dep. 31-32. Lokke's partner, Officer Bronson, then reached through the other (unblocked) door, grabbed Xiong's hair, and threw her to the ground, saying "get the fuck out of here." Nguyen Dep. 34-35. Xiong screamed, covered her face, and fell to her knees with her arms sprawled out.[3] Nguyen Dep. 31, 36.

---

[3]Xiong believes that the same officer both slammed the door into her and grabbed her hair, but she could not see what was happening. Xiong Dep. 31-32.

Xiong sat on the ground in shock for a few moments while her friends asked the officers why they had assaulted Xiong. Nguyen Dep. 39; Xiong Dep. 34. Lokke responded that "you bitches and whores need to get the fuck out of here." Nguyen Dep. 39; *see also* Xiong Dep. 35 (recalling that the officers called them "whores" and said "you bitches can't be here"). Nguyen protested that they had the right to be where they were. Nguyen Dep. 39. Lokke grabbed Nguyen's arm and pushed her away, saying "get the fuck out of here." Nguyen Dep. 39-40. Bronson likewise grabbed Phratsachack's arm and pushed her. Nguyen Dep. 39-40. Lokke also threatened to arrest the women. Phratsachack Dep. 32-33. At some point, according to Nguyen, a stranger (who Nguyen thought was a bouncer from a nearby bar) came outside and whispered to the women that they should leave because the officers "come here a lot" and "are trouble." Nguyen Dep. 40-43.

The women began walking away. Nguyen Dep. 43. As they were leaving, Phratsachack decided to photograph the officers. Phratsachack Dep. 35. She took two photos with her cell phone, but was not satisfied with the quality of those photos. Phratsachack Dep. 35-36. Phratsachack then took a camera out of her purse. Phratsachack Dep. 35-36. When the officers saw Phratsachack with the camera, they ran over to the women. Nguyen Dep. 43. Lokke tried to grab the camera away from Phratsachack and scratched her chest in the process. Nguyen Dep. 44; Phratsachack Dep. 36-37.[4]

Lokke then announced that the three women were under arrest. Nguyen Dep. 44. Nguyen protested that they had not done anything wrong, to which Lokke replied, "you didn't

---

[4]Xiong testified that it was Bronson who tried to get the camera away from Phratsachack. Xiong Dep. 37-38.

shut your fucking mouth when I told you to." Nguyen Dep. 44-45. Nguyen threatened to file a complaint against Lokke, who responded that he had heard such threats before. Nguyen Dep. 45. Lokke also told Nguyen that she had "no fucking rights" and would be going to jail. Nguyen Dep. 45. Nguyen was then arrested.

There is a factual dispute concerning who arrested Nguyen. Both Nguyen and Xiong testified that it was Lokke. Nguyen Dep. 45-46; Xiong Dep. 38-39. Bronson, however, testified that he, not Lokke, arrested Nguyen. Bronson Dep. 87-88. In any event, Nguyen testified that one of the officers twisted her hands behind her back, slammed her against the wall, and put the handcuffs on very tightly. Nguyen Dep. 45-46. When Nguyen asked for the handcuffs to be loosened, Lokke told her to "shut the fuck up." Nguyen Dep. 46. Nguyen was eventually taken to the Hennepin County Jail. Nguyen Dep. 49. After several hours, a friend bailed her out. Nguyen Dep. 49. She was later arraigned on a charge of disorderly conduct, but the charge was eventually dismissed. Nguyen Dep. 50.

While Nguyen was being arrested by one officer, the other officer was trying to arrest Phratsachack. (Phratsachack believes that it was Bronson, Phratsachack Dep. 37; Bronson appears to claim that he did not interact with Phratsachack, Bronson Dep. 95.) The officer twisted Phratsachack's arm behind her back and tried to push her down into a snowbank. Phratsachack Dep. 37-38; Nguyen Dep. 58-59. Phratsachack managed to pull free from the officer's grasp and run away. Phratsachack Dep. 39-40; Nguyen Dep. 59. Xiong also ran away. Xiong Dep. 41. Xiong then called her husband, who picked up Xiong and Phratsachack and drove them home. Xiong Dep. 41.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. Excessive Force

The Fourth Amendment prohibits unreasonable seizures. U.S. Const. amend. IV. The right to be free from an unreasonable seizure includes the right to be free from excessive force used to effect a seizure. *See Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005). Plaintiffs bring unlawful-seizure claims against both Lokke and Bronson. Lokke and Bronson argue that, because they inflicted only de minimis injuries on plaintiffs, they are entitled to qualified immunity under *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011).

In *Chambers*, the Eighth Circuit held that a plaintiff need not show more than de minimis injuries in order to prevail on a claim of excessive force. *Id.* at 906-08. But because the Eighth Circuit's previous case law had not been clear on this point, the police officers who had been sued in *Chambers* — and who had inflicted only de minimis injuries on the plaintiff — were found to be entitled to qualified immunity. *Id.* at 908-09. Lokke and Bronson argue that, because their encounter with plaintiffs occurred before *Chambers* was decided, and because they

inflicted only de minimis injuries on plaintiffs, they too are entitled to qualified immunity. The Court disagrees.

The problem with Lokke and Bronson's argument is that it conflates two separate questions: First, did the officers have the right to *seize* plaintiffs? Second, if the officers had the right to seize plaintiffs, did they use excessive force in *effecting* that seizure?

*Chambers* addresses only the second question. In *Chambers*, it was undisputed that the police had the right to seize the plaintiff; what the plaintiff challenged was the amount of force that the police employed in the course of seizing him. As noted, before *Chambers* was decided, it was unclear in the Eighth Circuit whether a plaintiff who suffered only de minimis injuries in the course of an otherwise lawful seizure could sue for excessive force.

In this case, however, plaintiffs allege that Lokke and Bronson did not have the right to seize them *at all*. When there is no right to seize a citizen — that is, when there is no right to detain a citizen even momentarily — then there is also no right to use force against that citizen. Just as "officers do not have the right to use any degree of physical force or threatened force to coerce an individual to consent to a warrantless search of his home," *Hemphill v. Hale*, 677 F.3d 799, 801 (8th Cir. 2012) (per curiam), officers do not have the right to use any degree of force against an individual whom the officers have no right to detain. *See Smith v. Appledorn*, No. 11-2966, 2013 WL 451320, at *3 (D. Minn. Feb. 6, 2013) ("before a police officer can use physical force, the arrest or investigatory stop itself must be justified").

It has long been clearly established that a seizure without probable cause is unreasonable under the Fourth Amendment (except under narrow circumstances recognized in such cases as *Terry v. Ohio*, 392 U.S. 1 (1968)). *See Smith*, 2013 WL 451320, at *5 ("It has been clearly

established for many years that an officer cannot seize a person without having specific and articulable facts to justify the intrusion."). It follows, then, that a reasonable officer would know that, in a situation in which any seizure is unreasonable, the use of any force to effect a seizure would likewise be unreasonable. *Cf. Hemphill*, 677 F.3d at 801 (a reasonable officer would have known in August 2009 that it is unlawful to use force to coerce consent to a warrantless search).

A contrary ruling would lead to absurd results. As defendants candidly acknowledged at the summary-judgment hearing, the logical implication of their position is that, prior to *Chambers*, an officer could reasonably have believed that it was lawful for him to stand on a street corner and, just for the fun of it, punch or kick or use a Taser on every tenth person who walked by — as long as the officer was careful to inflict no more than de minimis injury. Surely not a single police officer in the Eighth Circuit believed such a thing. Both before and after *Chambers*, the law was crystal clear that an officer does not have the right to effect *any* seizure of a citizen — and thus does not have the right to use *any* force against a citizen — except when there is probable cause to believe that the citizen has committed a crime (or in the narrow circumstances when probable cause is not required).

Defendants insist that, absurd though it may seem, *Chambers* nevertheless entitles them to qualified immunity. As defendants point out, the plaintiff in *Chambers* was subjected to the use of force after he was already handcuffed and secured. *Chambers*, 641 F.3d at 902. At that point, defendants argue, there was no longer a need to use any force against him — making him comparable to individuals (such as plaintiffs) who argue that the police did not have the right to use any force against them.

But when a suspect is handcuffed and detained, the police *are* using force against him — continuously. Such a suspect has been "seized" and remains "seized" as long as he is in custody. If a § 1983 plaintiff such as Chambers concedes that he could have been lawfully detained, then the plaintiff is necessarily objecting to the amount, and not to the fact, of force being used against him. Defendants' argument to the contrary is based on the premise that each use of force in the course of a continuous detention must be parsed out and analyzed as a separate seizure. That is not how the *Chambers* court conducted its analysis, however. Instead, the *Chambers* court treated the events during and shortly after the plaintiff's arrest as one continuous use of force in the course of a single, otherwise-lawful Fourth Amendment seizure. *See Chambers*, 641 F.3d at 905 (holding that plaintiff's allegations would be analyzed only under the Fourth Amendment because all of the incidents "still occur[red] in [the] course of a seizure of a free citizen." (citation and quotations omitted)). The Court therefore does not read *Chambers* to address a case in which the officer did not have the right to detain the plaintiff at all and thus did not have the right to use *any* force against the plaintiff.

Finally, defendants call the Court's attention to *LaCross v. City of Duluth*, 713 F.3d 1155 (8th Cir. 2013), in which the Eighth Circuit applied *Chambers* to hold that an officer who used a Taser on a suspect was entitled to qualified immunity. But implicit in the Eighth Circuit's analysis in *LaCross*, just as in its analysis in *Chambers*, is the assumption that the officer had the right to seize the plaintiff. *Id.* at 1157 (officer suspected that the plaintiff was an intoxicated minor); *Chambers*, 641 F.3d at 901-03 (plaintiff was placed under arrest during execution of a search warrant and was later convicted of a felony drug charge); *see also Smith*, 2013 WL

451320, at *4 ("*Chambers* did not present a situation where force was used in the course of an unreasonable seizure.").

Unlike *Chambers* and *LaCross*, this case involves plaintiffs whom — at least on plaintiffs' version of the facts — the officers had no right to seize.[5] According to plaintiffs, they were waiting quietly in a doorway for their ride home when they were suddenly attacked by Lokke and Bronson. The officers make no claim that, under plaintiffs' version of the facts, they had any right to arrest plaintiffs, conduct an investigatory stop, or detain plaintiffs even momentarily. Without any right to detain plaintiffs, Lokke and Bronson also had no right to use any degree of force against plaintiffs. Because this would have been clear to a reasonable officer at the time, Lokke and Bronson's motion for summary judgment on plaintiffs' excessive-force claims is denied.

## C. Nguyen's Claims Against Bronson

Bronson argues that, whether or not he is entitled to qualified immunity as a legal matter, the Court should as a factual matter grant summary judgment on Nguyen's First Amendment, excessive-force, and false-arrest claims against him. Bronson points out that, under Nguyen's version of the facts, Bronson did not arrest or even touch Nguyen. Indeed, Nguyen testified that she had no interaction with Bronson at all. Nguyen Dep. 45-46. If he had no interaction with

---

[5]The Court is aware of an even more recent Eighth Circuit case that involved the application of *Chambers*. *See Bishop v. Glazier*, No. 12-2661, 2013 WL 3880208 (8th Cir. July 30, 2013). A review of the district-court opinion in *Bishop*, however, indicates that the plaintiff conceded at oral argument before the district court that the defendant was constitutionally permitted to seize him — i.e., to use some degree of force. *Bishop v. Glazier*, 11-CV-1393 (RHK/JJK), slip op. at 13 (D. Minn. June 15, 2012) [ECF No. 38]. Like *LaCross*, therefore, *Bishop* does not involve a claim (as does this case) that the police had no right to seize the plaintiff at all.

Nguyen, Bronson argues, then he is entitled to summary judgment on Nguyen's claims against him.

As noted, however, there is a factual dispute concerning who arrested Nguyen. Although Nguyen believes that it was Lokke, Bronson testified that he, not Lokke, arrested Nguyen. Nguyen argues that a jury could credit Bronson's testimony, find that Bronson arrested her, and find that she has viable claims against him.

Citing *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) (en banc), Bronson argues that, in ruling on his motion, the Court must consider only Nguyen's version of the facts — including those portions that are not helpful to her case. In *Evans*, the Eleventh Circuit held that a court should not "pick and choose" among the evidence as a whole, but rather should accept the non-moving party's entire version of events, even if other evidence would in some respects be more favorable for that party. *Id.* at 1278. The *Evans* majority did not offer any rationale for this rule, but a concurring opinion reasoned that "absent some extraordinary circumstance, no reasonable jury would believe that a party was lying when he said something harmful to his own case." *Id.* at 1284 (Carnes, Dubina, and Hull, JJ., concurring).

The problem with this rationale, though, is that a jury need not believe that a witness is *lying* in order to disbelieve part of that witness's testimony. Human perception and memory are imperfect; sometimes truthful witnesses just get things wrong. As this Court routinely instructs juries, "people sometimes hear or see things differently and sometimes forget things," and the jury must consider "whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood . . . ." 8th Cir. Model. Crim. Jury Instr. § 3.04 (2011). Based on such

considerations, the jury is ultimately free to "believe all of what a witness said, or only part of it, or none of it." *Id.*

Perhaps there are circumstances under which a plaintiff's own testimony must be credited over other evidence that is more favorable to her case. But this is not such a case. There is no reason to believe that Nguyen was lying or playing games or trying to manipulate the factual record when she identified Lokke instead of Bronson as the arresting officer. Nguyen was undisputably arrested by one of the two officers, and Nguyen had nothing to gain by identifying Lokke instead of Bronson. Under these circumstances, a reasonable jury could believe all of Nguyen's testimony, except find that she was mistaken — and that Bronson was correct — about the identity of the officer who arrested her.

True, it is hard to understand how Nguyen could make such a mistake, given that Lokke and Bronson differ in age, race, and size. But it is equally hard to understand how Bronson could be mistaken about whether it was he or his partner who arrested Nguyen. This is a classic factual dispute that must be resolved by a jury. *See Guenther v. Armstrong Rubber Co.*, 406 F.2d 1315, 1317 (3d Cir. 1969) ("It is properly urged that plaintiff's testimony is simply incorrect in some of its detail; that part of what he stated is adverse to his own interest and if inaccurate is so because he is factually mistaken. This situation did not call for the summary dismissal of his claim.").

Because a reasonable jury could credit Nguyen's testimony on some matters and Bronson's testimony on other matters — and, specifically, because a reasonable jury could find that Bronson arrested Nguyen, despite Nguyen's belief to the contrary — Bronson's motion for summary judgment as to Nguyen's First Amendment, excessive-force, and false-arrest claims is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for partial summary judgment [ECF No. 26] is GRANTED IN PART and DENIED IN PART.

2. The motion is GRANTED as to the following counts and the following counts are DISMISSED WITH PREJUDICE AND ON THE MERITS:

    a. Counts 5, 15, and 25 (plaintiffs' § 1983 claims against the City).

    b. Counts 19, 20, 29, and 30 (Phratsachack's and Xiong's emotional-distress claims).

    c. Count 21 (Xiong's First Amendment retaliation claim).

3. The motion is DENIED in all other respects.

Dated: September 4, 2013

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge